AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
AUG 3 0 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One LG K20 Plus Cell Phone<br>IMEI: 354446095138712 | Case No.<br><br>**18MJ4722** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of Controlled Substances; conspiracy. |

The application is based on these facts:
See Affidavit of HSI Special Agent Greg Pettigrew, which is hereby incorporated by reference and made part hereof.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Greg Pettigrew, HSI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: August 30, 2018

_____
Judge's signature

City and state: San Diego, CA

Hon. Clinton E. Averrite, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Greg Pettigrew, of the Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search one LG K20 Plus Cell Phone (the **Target Device**), as described in Attachment A, incorporated herein, seized on July 9, 2018, from Laura DUARTES ("Defendant") at the San Ysidro, California, Port of Entry.

2. The **Target Device** was seized from Defendant after Customs and Border Protection Officers at the San Ysidro Port of Entry found approximately 15.72 kilograms of methamphetamine inside her car. Defendant has been charged with importing methamphetamine into the United States, in violation of 21 U.S.C. §§ 952 and 960. *See* Criminal Case No. 18CR3479-DMS. As set forth below, based on my training and experience, I believe probable cause exists to believe that the **Target Device** contains evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

3. The information contained in this affidavit is based upon my experience, training, and consultation with other law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation.

## EXPERIENCE AND TRAINING

4. I am a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since July 2017. I am a graduate of a 27-week criminal investigator training program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.

1

5. Prior to becoming a Special Agent with HSI, I worked as a Border Patrol Agent for 11 years. In addition to performing the traditional border patrol mission, I was a member of the Joint Targeting Team (JTT) within the Sector Intelligence Unit (SIU), which conducted targeted investigations of individuals and organizations involved in the illicit movement of people across the United States/Mexico international border.

6. During my tenure with HSI, I have participated in the investigation of numerous narcotics smuggling organizations, which have resulted in the issuance of search warrants, arrest warrants, and the indictments of persons for such crimes. In the course of my duties, I investigate and prepare for prosecution cases against individuals suspected of bringing in and transporting narcotics into the United States with the intent to distribute; and individuals suspected of transporting bulk cash derived from narcotics proceeds out of the United States.

7. By virtue of my employment with HSI, I have performed various tasks, which include, but are not limited to: functioning as a case agent, or co-case agent for investigations of narcotics smuggling organizations; functioning as a surveillance agent and thereby observing and recording the movements of persons suspected of narcotics smuggling; interviewing suspects, witnesses, and cooperating individuals with specific knowledge relevant to narcotics trafficking.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributable quantities of controlled substances, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug traffickers will use cellular/mobile telephones to direct persons to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports of Entry.

   f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with persons who transport their narcotics and/or drug proceeds.

   g. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

3

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, that searches of cellular/mobile telephones associated with narcotics smugglings yield evidence:

a. tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephone; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//
//

4

**PROBABLE CAUSE**

12. On July 9, 2018, at approximately 9:15 a.m., Defendant tried to enter the United States from Mexico through the San Ysidro Port of Entry. Defendant was alone, driving a vehicle registered to her. In pre-primary inspection, a drug dog alerted to an odor emanating from the front passenger door seam. Defendant gave two negative customs declarations. She told an inspecting officer that she was heading back home to San Diego after visiting her husband in Mexico (who was undergoing cancer treatment). Defendant told the inspecting officer that she got the car about one week prior.

13. At secondary inspection, officers found a non-factory compartment in Defendant's vehicle. Reaching the compartment required removing the front tires. Once that was complete, officers found 27 packages under the front seat floor panels. The packages tested positive for Methamphetamine (totaling approximately 15.72 kilograms). Defendant was arrested and the **Target Device** was seized incident to Defendant's arrest.[1]

14. Defendant's crossing records show she crossed in the smuggling vehicle twice in the week preceding her arrest. A vehicle registration card found at the time of Defendant's arrest shows the car was registered to Defendant on June 26, 2018 – two weeks before Defendant's arrest.

15. Based upon my experience and investigation in this case, I believe that Defendant, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that Defendant may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

---

[1] On July 9, 2018, an incomplete download of the **Target Device** occurred at the Port of Entry. In an abundance of caution, I ask the court not to consider information agents may or may not have seen from that download in determining whether there is probable cause for the requested warrant.

5

16. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

17. Finally, I am aware that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as Defendant will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given these facts, I respectfully request permission to search the **Target Device** for data beginning on May 9, 2018, up to and including July 9, 2018.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the

6

device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952, 960, and 963.

22. Because the **Target Device** was promptly seized during the investigation of Defendant's trafficking activities and has been securely stored, there is probable cause to believe that evidence of the illegal activities committed by Defendant continues to exist on the **Target Device**. As stated above, the proposed date range for this search is from May 9, 2018, up to and including July 9, 2018.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Greg Pettigrew
Homeland Security Investigations

Subscribed and sworn to before me this ___30___ day of August, 2018.

_____
The Honorable Clinton E. Averitte
United States Magistrate Judge

## ATTACHMENT A

The following property is to be searched:

    1 LG K20 Plus Cell Phone
    IMEI: 354446095138712

The **Target Device** is currently in the Customs and Border Protection Evidence Custody Room, 9495 Customhouse Plaza, San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 9, 2018, up to and including July 9, 2018:

a. tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**